Lisa S. Kantor (SBN: 110678)
lkantor@kantorlaw.net
J. David Oswalt (SBN: 73439)
doswalt@kantorlaw.net
Elizabeth Hopkins (SBN: 324431)
ehopkins@kantorlaw.net
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, California 91324
Telephone: (818) 886-2525
Facsimile: (818) 350-6272

Kathryn M. Trepinski (SBN: 118378)
ktrepinski@trepinskilaw.com
LAW OFFICES OF KATHRYN M. TREPINSKI
A Law Corporation
8840 Wilshire Boulevard, Suite 333
Beverly Hills, California 90211
Telephone: (310) 201-0022
Facsimile: (310) 841-6872

Attorneys for Plaintiffs AURORA BAILEY and EMILY JUMP, on behalf of themselves and all others similarly situated

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AURORA BAILEY and EMILY JUMP, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

ANTHEM BLUE CROSS LIFE AND HEALTH INS. CO. dba ANTHEM BLUE CROSS; BLUE CROSS OF CALIFORNIA dba ANTHEM BLUE CROSS,

Defendant.

Case No. 4:16-cv-04439-JSW

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

DATE: May 20, 2022
TIME: 9:00 a.m.
JUDGE: Hon. Jeffrey S. White
CTRM: Courtroom 5, 2nd Floor

Complaint Filed: August 5, 2016
1st Am. Complaint Filed: June 19, 2017
2nd Am. Complaint Filed: January 25, 2018
3rd Am. Complaint Filed: May 23, 2018

**NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 20, 2022 at 9:00 a.m., or as soon thereafter as this matter may be heard before the Honorable Jeffrey S. White, U.S. District Court Judge, in the above-titled Court, located at 1301 Clay Street, Oakland, California 94612, Plaintiffs Aurora Bailey and Emily Jump ("Plaintiffs"), on behalf of themselves and all others similarly situated will, and do hereby move, for final approval of the settlement of the above-captioned class action pursuant to Federal Rule of Civil Procedure 23(e).

Plaintiffs seek entry of the [Proposed] Final Approval Order which (1) grants the Motion for Final Approval of all terms set forth in the Settlement Agreement; (2) determines that this action satisfies the prerequisites for class certification for settlement purposes under Federal Rules of Civil Procedure 23(b)(3) and 23(e) and finally certifies the Settlement Class for settlement purposes; and (3) determines that the Settlement Agreement submitted by the parties is finally approved as fair, reasonable, adequate and in the best interests of the Settlement Class.

Plaintiffs' motion is based upon this Notice and Motion, the accompanying Memorandum in Support of the Motion for Final Approval, the Declarations of Aurora Bailey, Elizabeth Hopkins, Emily Jump, Lisa S. Kantor, J. David Oswalt, Richard M. Pearl, Peter S. Sessions and Kathryn M. Trepinski, the Settlement Agreement, the [Proposed] Final Approval Order and [Proposed] Final Judgment, all filed concurrently, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

Dated: April 1, 2022

KANTOR & KANTOR, LLP

LAW OFFICES OF KATHRYN M. TREPINSKI

By: /s/ Lisa S. Kantor
Attorneys for Plaintiffs Aurora Bailey and Emily Jump, on behalf of themselves and all others similarly situated

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

## TABLE OF CONTENTS

I. INTRODUCTION ........ 1

II. SUMMARY OF THE CASE ........ 2

A. Factual Background ........ 2

B. Procedural History ........ 3

C. Discovery and Legislative Efforts ........ 4

III. DESCRIPTION OF THE SETTLEMENT ........ 5

A. Reprocessing of Class Members' Claims ........ 5

B. Anthem's Business Practice Changes ........ 6

IV. APPROVAL OF A CLASS ACTION SETTLEMENT UNDER RULE 23 ........ 6

V. FINAL CLASS CERTIFICATION OF THE SETTLEMENT CLASS ........ 7

A. The Settlement Class Satisfies the Rule 23(a) Requirements ........ 7

B. The Settlement Class Satisfies the Rule 23(b)(3) Requirements ........ 7

C. The Class Notice Satisfied the Rule 23(c)(2) Notice Requirements ........ 8

VI. THE SETTLEMENT SATISFIES THE RULE 23(E)(2) REQUIREMENTS FOR FINAL APPROVAL ........ 9

A. Rule 23(e)(2)(A) - Adequate Representation ........ 9

B. Rule 23(e)(2)(B) - Negotiation of the Settlement Agreement ........ 9

C. Rule 23(e)(2)(C) - Adequate Relief ........ 10

D. Rule 23(e)(2)(D) - Equitable Treatment of Class Members ........ 12

E. The Class Notice Satisfied the Rule 23(e)(1)(B) Notice Requirements ........ 12

VII. CONSIDERATION OF THE *CHURCHILL/ HANLON/STATON* FACTORS SUPPORTS FINAL APPROVAL OF THE SETTLEMENT ........ 13

VIII. CONSIDERATION OF THE *BLUETOOTH* FACTORS CONFIRMS THAT THE REQUESTED ATTORNEYS' FEE AWARD IS NOT THE PRODUCT OF COLLUSION ........ 15

IX. CONCLUSION ........ 15

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

## TABLE OF AUTHORITIES

**Federal Cases**

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997) .......... 7

*Baker v. SeaWorld Entm't, Inc.*, 2020 WL 4260712 (S.D. Cal. Jul. 24, 2020) .......... 10

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) .......... 6, 7, 14, 15

*Briseño v. Henderson*, 998 F.3d 1014 (9th Cir. 2021) .......... 6, 13, 15

*Churchill* v. *General Electric*, 361 F.3d 566 (9th Cir. 2004) .......... 9

*Fraley v. Facebook, Inc.*, 966 F. Supp. 2d 939 (N.D. Cal. 2013) .......... 9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......... 7, 15

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .......... 15

*In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686 (S.D.N.Y. 2019) .......... 9

*Jackson v. King Cty.*, 2022 WL 168524 (W.D. Wash., Jan. 18, 2022) .......... 13

*Limney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) .......... 14

*Miguel-Sanchez v. Mesa Packing, LLC*, 2021 WL 4893394 (N.D. Cal. Oct. 20, 2021) .......... 15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) .......... 11

*Ontiveros v. Zamora*, 303 F.R.D. 356 (E.D. Cal. 2014) .......... 14

*Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035 (9th Cir. 2019) .......... 8

*Satchell v. Fed. Express Corp.*, 2007 WL 1114010 (N.D.Cal. Apr. 13, 2007) .......... 10

*Taafua v. Quantum Global Techs., LLC*, 2021 WL 579862 (N.D. Cal. Feb. 16, 2021) .......... 12

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

*Van Vranken v. Atlantic Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ... 12

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) ... 7

**Federal Statutes**

28 U.S.C. § 1715 ... 14

**Federal Rules**

Fed. R. Civ. P. 23(c)(2)(B) ... 8

Fed. R. Civ. P. 23(a), (b) and (e) ... 1

Rule 23(a) ... 7, 9

Rule 23(b) ... 9

Rule 23(a)(4) ... 9

Rule 23(e)(2)(A) ... 9

Rule 23(b)(3) ... 7, 8

Rule 23(c)(2) ... 2, 8

Rule 23(e)(1)(B) ... 2, 12

Rule 23(e)(2) ... 9

Rule 23(e)(2)(A) ... 9

Rule 23(e)(2)(B) ... 9

Rule 23(e)(2)(C) ... 10

Rule 23(e)(2)(D) ... 12

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

# MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

## I. INTRODUCTION

In this motion, Plaintiffs Aurora Bailey and Emily Jump ask that the Court approve a class action settlement with Defendant Anthem Blue Cross Life and Health Insurance Company ("Anthem").[1] The Settlement is on behalf of a Class of California residents who (1) were enrolled under an ERISA health plan issued or administered by Anthem, (2) had been diagnosed with an eating disorder and (3) had a request for eating disorder treatment processed through Anthem's Utilization Review program. A Subclass consists of Class Members whose requests for authorization for eating disorder treatment were denied by Anthem.

Under the settlement, qualifying Subclass Members could elect to have their denied claims reprocessed by Anthem under a revised Utilization Review program or, if they chose, receive a set payment, the amount of which is dependent on whether they continued treatment ($5,500) or discontinued treatment ($2,100) after the denial. All Class Members benefit from the injunctive relief that is part of the Settlement.

On August 27, 2021, the Court preliminarily approved the settlement. Since that date, notice was sent to 474 Class Members and the Settlement Administrator received and processed the Claim Forms of 44 Subclass Members. Upon final approval and after the Settlement Effective Date, the Settlement Administrator will send checks to qualifying Subclass Members and send Reprocessing Claims to Anthem for Reprocessing.[2]

As explained in this motion, the proposed class action settlement meets the requirements of Federal Rules of Civil Procedure 23(a), (b) and (e) for final approval and

[1] Capitalized terms are defined in the Definitions section of the Settlement Agreement ("SA"), attached as Exhibit A to the Declaration of Lisa S. Kantor ("Kantor Dec."), filed concurrently. An Index to the SA is attached as Exhibit B to the Kantor Dec.

[2] The Settlement Effective Date is the date when the time for appeal from the Judgment and Final Approval Order has expired or, if appealed, when the Judgment and Final Approval Order has been affirmed and such affirmance is no longer subject to further review. SA I. HH.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

the notice sent to the Class complied with Rule 23(c)(2) and (e)(1)(B). Therefore, the Court should enter the proposed Final Approval Order.

## II. SUMMARY OF THE CASE

### A. Factual Background

This is the fourth lawsuit brought by Class Counsel against Anthem alleging that its "Utilization Review" program, a uniform set of policies and procedures used to review requests for mental health treatment, created unlawful barriers to treatment for those with one of the nine psychiatric disorders classified as Severe Mental Illnesses under the California Mental Health Parity Act ("Parity Act") and, therefore, violated the Parity Act and other laws. (Kantor Dec. ¶¶ 6-22.) The earlier lawsuits were state court actions, two of which settled individually, and the third, *Ames v. Anthem Blue Cross Life and Health Ins. Co.,* LASC Case No. BC591623 ("*Ames*"), settled as a class action under a settlement structure similar to the present settlement. (*Id.* at ¶¶ 14-22.) As in the present case, qualifying class members in the *Ames* settlement could elect to have their denied claims reprocessed by Anthem or, alternatively, could receive a set payment, the amount of which depended on whether they had continued or discontinued treatment after the denial. Also as in the present case, the *Ames* settlement involved significant injunctive relief. The Superior Court entered the final approval order in the *Ames* settlement in October 2020. (*Id*. at ¶ 22.) The present case is different from *Ames* because it involves class members who were enrolled in ERISA plans issued or administered by Anthem.

The present lawsuit was brought by Plaintiffs Aurora Bailey and Emily Jump, on behalf of themselves and all other similarly situated. Ms. Bailey suffers from anorexia nervosa and major depressive disorder, both Severe Mental Illnesses.[3] In May 2014, Ms. Bailey was admitted to a residential treatment facility for treatment of her eating disorder. Anthem authorized the initial 20 days of treatment, but then denied authorization for further treatment, relying on its 2014 "medical necessity" guidelines for eating disorder residential treatment. Despite the denial, Ms. Bailey remained in treatment and paid over

[3] Declaration of Aurora Bailey ("Bailey Dec.") ¶ 2, filed concurrently.



KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

$75,000 for that treatment. (Bailey Dec. ¶¶ 3-5.)

Ms. Jump suffers from anorexia nervosa, major depressive disorder and obsessive compulsion disorder, all Severe Mental Illnesses.[4] In March 2017, she was admitted to residential treatment for her eating disorder. Anthem authorized 76 days of treatment, but then denied authorization for further treatment, relying on Anthem's 2017 clinical guidelines for eating disorder residential treatment. Ms. Jump remained in treatment and paid over $101,200 for that treatment. (Jump Dec. ¶¶ 3-5.)

**B. Procedural History**

The initial Complaint was filed on August 5, 2016, as a class action on behalf of a class of persons insured under Anthem ERISA plans who were diagnosed with an eating disorder and whose request for coverage for treatment was processed under Anthem's Utilization Review program, including a subclass of those whose requests resulted in denials. (Kantor Dec. ¶ 25.) In the Complaint, Ms. Bailey alleged that Anthem's denial of authorization for her continued residential treatment violated both ERISA and the federal and state parity laws. She requested payment of her denied benefits and injunctive and declaratory relief. (*Id.* at ¶ 26.) The Complaint's factual allegations regarding Anthem's Utilization Review program were essentially the same as the earlier state court cases. (*Id.*)

In a series of motions to dismiss, Anthem challenged Ms. Bailey's standing on various grounds and the Court granted Anthem's motions, but with leave to amend. (Kantor Dec. ¶¶ 27-33.) In the Third Amended Compliant ("TAC") filed on May 23, 2018, Emily Jump was added as a plaintiff and the TAC no longer sought benefits, but, instead, now sought injunctive and declaratory relief requiring Anthem to reprocess the Plaintiffs' denied claims under revised procedures and guidelines. (*Id*. at ¶ 30.) Anthem filed another motion to dismiss, arguing, in part, that Ms. Bailey lacked standing to pursue prospective relief because she was not a current beneficiary under an Anthem ERISA plan and no longer sought retrospective relief in the form of benefits. (*Id*. at ¶ 31.) The Court granted the motion without leave to amend as to Plaintiff Bailey. (*Id*.) However, as to Plaintiff

[4] Declaration of Emily Jump ("Jump Dec.") ¶ 2, filed concurrently.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

Jump, the Court held that Ms. Jump could not pursue the equitable remedy of a remand for reprocessing because she had an adequate remedy in a claim for damages, but she could pursue her claim for declaratory and injunctive relief requiring Anthem to revise its criteria and procedures to comply with the law, since she seeks "an order that requires Anthem to consider any of her future claims for benefits under a process that is compliant with ERISA and the California Mental Health Parity Act." (*Id.* at ¶ 32.)

Ms. Bailey filed an appeal of her dismissal, which was fully briefed and awaiting oral argument when the parties reached the present settlement. (Kantor Dec. ¶ 33.)

**C. <u>Discovery and Legislative Efforts</u>**

Because this case was factually related to the earlier-filed state court lawsuits, Plaintiffs' counsel was able, with Anthem's agreement, to rely upon the substantial discovery already taken in the earlier cases regarding Anthem's Utilization Review program and did not need "to reinvent the wheel" by duplicating that discovery in this case.[5] Counsel for both sides relied upon deposition testimony taken and documents produced in the earlier cases in developing the issues involved in this case and, ultimately, the parameters of the settlement. (Trepinski Dec. ¶ 15.)

In addition, during the pendency of this case, Plaintiffs' counsel began working with the California legislature on rewriting the California Mental Health Parity Act. (Kantor Dec. ¶ 35; Trepinski Dec. ¶¶ 16-20.) Counsel realized that they could help draft legislation that would address deficiencies in Anthem's Utilization Review program at issue in this case. A "dual" track approach was adopted to correct Anthem's business practices through *both* this litigation and legislative change. Plaintiffs' counsel was successful in this effort and the Class benefited from the injunctive relief obtained in the settlement and the legislative changes to the Parity Act. (Trepinski Dec. ¶¶ 19-20.)

---

[5] Declaration of Kathryn M. Trepinski ("Trepinski Dec.") ¶¶ 8-14, filed concurrently. In addition, the present case was factually related to an earlier case, *Katz v. Anthem*, LASC Case No. BC451654, filed by Ms. Trepinski, which also challenged Anthem's Utilization Review program and involved substantial discovery regarding that program. *Id.* at ¶¶ 4-7.



KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

## III. DESCRIPTION OF THE SETTLEMENT

### A. Reprocessing of Class Members' Claims

The significant relief provided to qualifying Subclass Members is the opportunity to have their claims for eating disorder treatment reprocessed by Anthem under its current criteria and procedures and without the use of the unlawful medical necessity criteria and biased reviewers challenged by Plaintiffs in this lawsuit. Alternatively, Subclass Members can apply for a "set payment," the amount of which depends on whether they continued treatment or discontinued treatment after Anthem's denial.

**Reprocessing Subclass** – A Class Member could qualify for Reprocessing if their request for authorization for eating disorder treatment was denied for lack of medical necessity and they obtained the treatment and paid for the treatment. (SA ¶ III. A. 1. a. i.) If after Reprocessing, Anthem determines the treatment was medically necessary, the Reprocessing Subclass Member will recover the full amount of their Out-of-Pocket Payments, provided the total recovery for all Subclass Members does not exceed $400,000. If it does, Subclass Members will receive a pro rata share of the $400,000. (*Id.*)

**Continued Treatment – Set Payment Subclass** – A Class Member could qualify for a Continued Treatment – Set Payment if their request for authorization for eating disorder treatment was denied for lack of medical necessity and, after the denial, they obtained the treatment and paid for the treatment. (SA ¶ III. A. 1. a. iii.) The amount of the payment will be $5,500.00 or the full amount of their Out-of-Pocket Payments, whichever is less. (*Id*.) Anthem will make this  payment if the Class Member provides proof of their payment for the continued treatment and without a determination that the continued treatment was medically necessary. (SA ¶ III. A. 1. b. ii.)

**Discontinued Treatment – Set Payment Subclass** – A Class Member could qualify for a Discontinued Treatment – Set Payment if they had a request for authorization for eating disorder treatment denied for lack of medical necessity and, as a result of the denial, they did not obtain the treatment. (SA ¶ III. A. 1. a. iv.) The amount of the payment will be $2,100.00 and Class Members who would qualify for the Reprocessing and/or

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

Continued Treatment Subclasses can elect to participate as Discontinued Treatment Subclass Members. (*Id*.) If they do, all they must submit is a fully completed Claim Form. (SA ¶ III. A. 1. b. iii.)

**B. Anthem's Business Practice Changes**

In addition to the payments to qualifying Subclass Members, all Class Members will be the beneficiaries of the following injunctive relief:

a. After this litigation was filed, Anthem discontinued using its internally created guidelines and criteria to evaluate the medical necessity of eating disorder that were in place prior to its adoption of the MCG Behavioral Health Care Guidelines;

b. Anthem has also discontinued using doctors from a third-party vendor as peer reviewers and, instead, uses in-house physicians to conduct peer reviews;

c. Anthem has changed its non-certification letters so that the letters identify the peer reviewer; and

d. Following the Settlement Effective Date, if, in denying a request for eating disorder treatment, the Anthem peer reviewer determines that a lower level of care is medically necessary, the peer reviewer will identify the lower level of care that may be available.

(SA ¶ III. A. 4.) The injunctive relief addresses deficiencies in Anthem's Utilization Review program that were central issues in Plaintiffs' lawsuit. (Kantor Dec. ¶ 69.) In addition, Plaintiffs' legislative efforts resulted in changes to Anthem's Utilization Review program to ensure compliance with the new Mental Health Parity Act. (Trepinski Dec. ¶¶ 16-20.)

**IV. APPROVAL OF A CLASS ACTION SETTLEMENT UNDER RULE 23**

The Ninth Circuit has repeatedly noted that a strong judicial policy favors settlement of Rule 23 class actions. *Briseño v. Henderson*, 998 F.3d 1014, 1031 (9th Cir. 2021). The approval of a class action settlement under Rule 23 takes place in two stages. In the first stage, the court preliminarily approves the settlement pending a fairness hearing, temporarily certifies a settlement class, and authorizes notice to the class. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 252 (N.D. Cal. 2015) (citation omitted). In the second

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

stage, at the final fairness hearing, the Court hears any objections to the treatment of the litigation as a class action or to the settlement terms. *Id.* The Court then determines whether the parties may settle the class action pursuant to the agreed-upon terms. *Id.*

Before considering the terms of the settlement, however, the Court must first determine whether the Settlement Class can be finally certified under Rule 23.

## V. FINAL CLASS CERTIFICATION OF THE SETTLEMENT CLASS

### A. The Settlement Class Satisfies the Rule 23(a) Requirements

Class certification under Rule 23 requires two steps. First, plaintiffs must satisfy the four prerequisites under Rule 23(a), namely numerosity, commonality, typicality, and adequacy of representation. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011). In addition, plaintiffs must show that at least one of the bases for Rule 23(b) is met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

In the order granting preliminary approval of the settlement, the Court found that the Settlement Class satisfied the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 23(a).[6] Plaintiffs are unaware of any changes or developments that would require the Court to alter its prior analysis and conclusions.

### B. The Settlement Class Satisfies the Rule 23(b)(3) Requirements

An action that meets the prerequisites of Rule 23(a) may be maintained as a class action only if it also meets the requirements of one of the three subdivisions of Rule 23(b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998). In the present case, Plaintiffs seek certification under Rule 23(b)(3), which requires "[1] that the questions of law or fact common to class members predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

In its order granting preliminary approval, the Court also found that the Settlement Class satisfied the predominance and superiority requirements of Rule 23(b)(3). (August

---

[6] August 27, 2021 Order Preliminarily Approving Class Action Settlement and Payment to Class Representatives ("August 27, 2021 Order"), at 2.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

27, 2021 Order, at 2.) Plaintiffs are unaware of any changes or developments that would require the Court to alter its prior analysis and conclusions.

**C. The Class Notice Satisfied the Rule 23(c)(2) Notice Requirements**

If the Court certifies a class under Rule 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The rule governs both the form and content of a proposed notice and requires that the notice "clearly and concisely" state "the nature of the action," the "definition of the class certified," the "class claims, issues, or defenses," information about appearing and opting out, and "the binding effect of a class judgment on members." *Id*. The notice requirement is designed to ensure that class notice procedures comply with the demands of due process. *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1045 (9th Cir. 2019).

In the present case, after Preliminary Approval, the Settlement Administrator mailed via first class U.S. Mail the Summary Settlement Notice to 474 individuals identified by Anthem as California residents enrolled in an ERISA plan and who had made a request for eating disorder treatment between August 5, 2012 and July 28, 2021 ("the Class Period") and, therefore, were Class Members. (Trepinski Dec. ¶¶ 26-27.) The Summary Settlement Notice described the settlement in detail and clearly advised Class and Subclass Members of their options: (1) participate in the settlement, which did not require further action; (2) object to the settlement; or (3) exclude themselves from the settlement. (S.A., Exhibit 8.) In addition, the notice contained information about a Settlement Website and a toll-free number where Class Members could obtain additional information about the settlement. (*Id.*)

Of the 474 notices mailed, 60 were returned as undeliverable with no forwarding address. (Trepinski Dec. ¶ 27.) The Settlement Administrator conducted an address search for updated addresses and, ultimately, only 16 notices could not be delivered. (*Id.*) The Settlement Administrator did not receive any requests of exclusion or objections. (*Id.* at ¶ 28.)

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

Both the content of the notice and the method of providing notice were reasonably calculated to provide notice to Class Members and were the best form of notice available under the circumstances. *See Churchill* v. *General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" (citation omitted)).

## VI. THE SETTLEMENT SATISFIES THE RULE 23(e)(2) REQUIREMENTS FOR FINAL APPROVAL

When the court determines that the proposed class preliminarily satisfies the requirements of Rule 23(a) and (b), the court must then consider whether the terms of the parties' settlement appear fair, reasonable, and adequate. F. R. Civ. P. 23(e)(2). To do so, Rule 23(e) requires the court to consider whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other. *Id.* In the present case, consideration of these factors establish that the proposed settlement is fair, reasonable, and adequate.

### A. Rule 23(e)(2)(A) - Adequate Representation

Rule 23(e)(2)(A) requires that the court consider whether "the class representatives and class counsel have adequately represented the class." This analysis is redundant of the requirements of Rule 23(a)(4). *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) (noting similarity of inquiry under Rule 23(a)(4) and Rule 23(e)(2)(A)). Since the Court has found that the proposed class satisfies Rule 23(a)(4) for purposes of class certification, the adequacy factor under Rule 23(e)(2)(A) is also met.

### B. Rule 23(e)(2)(B) - Negotiation of the Settlement Agreement

Rule 23(e)(2)(B) requires that the Court also consider whether the parties reached their settlement agreement through arm's length negotiations. A settlement that is reached after good faith, arms-length negotiations by experienced counsel "is entitled to a degree of deference as the private consensual decision of the parties." *Fraley v. Facebook, Inc.*, 966

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

F. Supp. 2d 939, 942 (N.D. Cal. 2013). In this regard, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is noncollusive." *Satchell v. Fed. Express Corp*., 2007 WL 1114010, at *4 (N.D.Cal. Apr. 13, 2007),

In the present case, the settlement negotiations took place over 30 months (December 2018 through May 2021) and included three mediation sessions before two different mediators, Magistrate Judge Margaret Nagle (Ret.) and Edward Oster, and extensive additional negotiations between counsel. (Kantor Dec. ¶¶ 36-55.) Evidencing the non-collusive nature of the negotiations, the parties continued to litigate the case during the negotiations, including fully briefing Plaintiffs' appeal of the Court's dismissal of Plaintiff Bailey. (*Id.* at ¶¶ 30-33.) Concurrently, the parties negotiated the *Ames* settlement, which involved a similar settlement structure and which was preliminarily and finally approved by the California Superior Court during the negotiations of the present case, further indicating the non-collusive nature of the present settlement. (*Id.* at ¶¶ 16-22.)

### C. Rule 23(e)(2)(C) - Adequate Relief

Rule 23(e)(2)(C) requires that a court, in determining whether a settlement agreement provides adequate relief for the class, must take into account "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any [other] agreement[s]" made in connection with the proposal. Fed. R. Civ. P. 23(e)(2)(C). The court must balance the continuing risks of litigation with the benefits afforded to class members. *Baker v. SeaWorld Entm't, Inc.*, 2020 WL 4260712, at *6-8 (S.D. Cal. Jul. 24, 2020).

In the present case, Plaintiffs and Anthem recognized the risk of continued litigation. The Court had dismissed Plaintiff Bailey and her appeal of that dismissal was fully briefed, but not yet argued, when the case settled. (Kantor Dec. ¶¶ 48 & 54.) On the other hand, the Court had denied Anthem's motion to dismiss as to Plaintiff Jump and, regardless of the outcome of the appeal, the litigation of Ms. Jump's claim for declaratory

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

and injunctive relief would have continued. (*Id.* at ¶¶ 31-32.) Therefore, both parties faced an uncertain litigation future. As a general matter, unless the settlement is clearly inadequate, approval of a settlement is "preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 526 (C.D. Cal. 2004) (citation omitted).

With respect to the proposed method of distributing relief to the Subclass, the reprocessing remedy gives Class Members the opportunity to have a "do over" and have Anthem reconsider their claims under Anthem's new medical necessity guidelines. (Kantor Dec. ¶ 63.) If the Subclass Member chooses to forgo reprocessing, they can qualify for a set payment, the amount of which is dependent on whether they continued ($5,500) or discontinued ($2,100) treatment after Anthem's denial. (*Id.* at ¶¶ 62 & 64-65.)[7] The amounts of the set payments are significantly larger than the similar payments in the *Ames* settlement (in that case, $2,375 for continued treatment and $1,500 for discontinued treatment), which was approved by the Superior Court. (*Id.* at ¶¶ 19 & 22.) As of March 13, 2021, the Settlement Administrator had received 44 claims and, of that number, six qualified for reprocessing, five qualified for a continued treatment ($5,500) award and 18 qualified for a discontinued treatment ($2,100) award. (Trepinski Dec. ¶¶ 29-31.)

Though there is a $400,000 "cap" on reprocessing claims, if the amount of approved claims exceeds the cap, claimants will receive a pro rata share of the $400,000. (Kantor Dec. ¶¶ 49-52.) Plaintiffs' counsel believed that the $400,000 cap would be sufficient to provide recoveries for Subclass Members who elect reprocessing. (*Id.*) If the six reprocessing claims are paid in full, the total amount of the awards would be within the $400,000 "cap." (Trepinski Dec. ¶ 31.)

Finally, if the Subclass Members are unhappy with the results of Anthem's reprocessing or the results of their claims for a set payment, they can appeal to a Special Master whose decision will be final and binding on the parties. (Kantor Dec. ¶ 66.) The

---

[7] For example, a Subclass Member who qualifies for reprocessing may choose a $2,100 Discontinued Treatment payment, which does not require proof of payment or medical necessity. Many *Ames* class members selected this option. (Kantor Dec. ¶ 62.)

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

parties agreed to the appointment as Special Master Eliot Gordon, Esq., a JAMS neutral who was appointed by the Superior Court as Special Master in the *Ames* settlement. (*Id.*)

As for attorneys' fees, the Settlement Agreement provides that Anthem will pay attorneys' fees and expenses in an amount awarded by the Court on Plaintiffs' motion, which is to be heard at the fairness hearing. (SA ¶ III. E. 1.) Anthem has the right to oppose Plaintiff's motion for attorneys' fees.

**D. Rule 23(e)(2)(D) - Equitable Treatment of Class Members**

Rule 23(e)(2)(D) requires that a court consider whether the proposed settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2)(D). In doing so, the Court determines whether the settlement "improperly grant[s] preferential treatment to class representatives or segments of the class." *Taafua v. Quantum Global Techs., LLC*, 2021 WL 579862, at * (N.D. Cal. Feb. 16, 2021) (citation omitted),

In the present case, the Settlement does not improperly discriminate between any segments of the Settlement Class as all Class Members are entitled to the same relief. Moreover, while the Settlement Agreement does allow Plaintiffs to seek an incentive award of $15,000 each, that amount is reasonable, and, in any event, whether to reward Plaintiffs for their efforts is within the Court's discretion. *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

**E. The Class Notice Satisfied the Rule 23(e)(1)(B) Notice Requirements**

In addition to the criteria of Rule 23(e)(2) for approval of a proposed settlement, Rule 23(e)(1)(B) requires that the "court must direct notice in a reasonable manner to all class members who would be bound by" the proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). As discussed above, the Settlement Administrator mailed notice to Class and Subclass Members that complied with the notice requirements of both Rules 23(c)(2) and 23(e)(1)(B).

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

## VII. CONSIDERATION OF THE *CHURCHILL/ HANLON/STATON* FACTORS SUPPORTS FINAL APPROVAL OF THE SETTLEMENT

In 2018, Rule 23(e)(2) was amended to set forth the specific criteria discussed above for determining whether a settlement was "fair, reasonable, and adequate." Prior to the amendment, the Ninth Circuit instructed the courts to consider the following factors (variously called the *Churchill*, *Hanlon* or *Staton* factors) in making that determination:

> [1] The strength of the plaintiffs' case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement.

*Briseño*, 998 F.3d at 1023. Though it is unclear the extent to which the amended Rule 23(e)(2) supplants these factors,[8] a consideration of the factors also supports approval.

As to the strength of plaintiffs' case and the risk of further litigation, including the risk of maintaining class action status through trial (factors 1, 2 and 3), the Court had dismissed Plaintiff Bailey's claims, she had appealed, and the appeal was fully briefed and awaiting oral argument when the parties reached the Settlement. (Kantor Dec. ¶¶ 31 & 33.) On the other hand, the Court had denied Anthem's motion to dismiss as to Plaintiff Jump. (*Id*. at ¶¶ 31-32.) Thus, both parties faced an uncertain litigation future.

As to the amount offered in settlement (factor 4), Anthem agreed that qualifying Subclass Members could elect to have their denied claims for eating disorder treatment reprocessed under a revised Utilization Review program or, if they chose, to receive a set payment. (SA ¶ III. A. 1. a. i., ii., iii & iv.) This is the same settlement structure that Anthem agreed to in the earlier *Ames* class action, which was approved by the Superior Court in October 2020. (Kantor Dec. ¶¶ 14-22.) The significant difference is that under the

[8] *Jackson v. King Cty.*, 2022 WL 168524, at *6, n.1 (W.D. Wash., Jan. 18, 2022) ("It remains unclear whether or to what extent Rule 23(e)(2)'s amendment supplanted the *Churchill* factors. . . . Here, the Court treats the *Churchill* factors as optional guideposts that may be applied in addition to Rule 23(e)(2)'s express requirements.").



KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

present Settlement Subclass Members who elect Reprocessing can recover the full amount of their Out-of-Pocket Payments, whereas in the *Ames* settlement the potential recovery was limited to $7,750. (Kantor Dec. ¶¶ 19 & 63.)

As to the extent of discovery completed and the stage of proceedings (factor 5), Plaintiffs relied upon the extensive discovery conducted in the three earlier and factually related cases. (Trepinski Dec. ¶¶ 8-15.) Class Counsel did not need further, duplicative discovery to meaningfully participate in the mediations and settlement negotiations. *See Limney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) ("In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." (citation omitted)).

As to the experience and view of counsel (factor 6), Class Counsel are experienced in both insurance and class action litigation and have been appointed as class counsel in similar litigation. (Kantor Dec. ¶¶ 85-92; Trepinski Dec. ¶¶ 47-59.) Class Counsel strongly believe that the proposed Settlement is fair, reasonable, and adequate and their opinion supports final approval. *See Ontiveros v. Zamora*, 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("The court gives considerable weight to class counsel's opinions regarding the settlement due to counsel's experience and familiarity with the litigation.").

As to the presence of a governmental participant (factor 7), no government entity is a party to this action. However, the United States Attorney General, as well as the Attorneys General for the relevant states, were notified of the settlement pursuant to the notice provision of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. (Trepinski Dec. ¶ 32.) CAFA presumes that, once put on notice, state or federal officials will raise any concerns that they may have during the normal course of the class action settlement procedures. *Bellinghausen*, 306 F.R.D. at 258. No state or federal official raised any objection or concerns regarding the settlement.

As to the reaction of the class members to the proposed settlement (factor 8), there were no objectors to the settlement and no Class Members chose to exclude themselves.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

(Trepinski Dec. ¶ 28.) Thus, this factor also weighs in favor of final approval. *Bellinghausen*, 306 F.R.D. at 258 ("[T[he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of the proposed class settlement . . . are favorable to the class members." (citation omitted)).

## VIII. CONSIDERATION OF THE *BLUETOOTH* FACTORS CONFIRMS THAT THE REQUESTED ATTORNEYS' FEE AWARD IS NOT THE PRODUCT OF COLLUSION

As directed by the Ninth Circuit, the Court must consider the terms of the proposed attorneys' fee award in determining whether the relief provided to the class is adequate. *Briseño*, 998 F.3d at 1023-26. Specifically, the Court must examine the attorneys' fee arrangement for the three signs of collusion identified in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (" the *Bluetooth* factors").

The first sign is "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Bluetooth*, 654 F.3d at 947 (citing *Hanlon*, 150 F.3d at 1021). Typically, this concern arises when the parties agree to a particular percentage award from a common fund. *See, e.g.*, *Bellinghausen*, 306 F.R.D. at 258-59 (settlement agreement originally provided for an attorneys' fee award of 30 percent of the settlement fund).

In the present case, there can be no collusion because Anthem has not agreed to any specific attorneys' fee award and, instead, has only agreed to pay whatever attorneys' fees are awarded by the Court. (SA ¶ III. E. 1.) Furthermore, Anthem has the right to oppose Plaintiff's motion for attorneys' fees. *See Miguel-Sanchez v. Mesa Packing, LLC,* 2021 WL 4893394, at *8 (N.D. Cal. Oct. 20, 2021) (Settlement was not collusive when the defendant "did not agree that a specific amount of fees should be awarded and did not agree to not oppose plaintiffs' motion for attorneys' fees."). The remaining two *Bluetooth* warning signs – a "clear sailing" provision and an arrangement for fees not awarded to the class to revert to the defendants – are not present in this case. *Bluetooth*, 654 F.3d at 947.

## IX. CONCLUSION

For the above reasons, the Court should finally approve the settlement.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

Dated: April 1, 2022

KANTOR & KANTOR, LLP
LAW OFFICES OF KATHRYN M. TREPINSKI

By: /s/ Lisa S. Kantor
Attorneys for Plaintiffs Aurora Bailey and Emily Jump, on behalf of themselves and all others similarly situated

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525