Lisa S. Kantor (SBN: 110678)
lkantor@kantorlaw.net
J. David Oswalt (SBN: 73439)
doswalt@kantorlaw.net
Elizabeth Hopkins (SBN: 324431)
ehopkins@kantorlaw.net
KANTOR & KANTOR, LLP
19839 Nordhoff Street
Northridge, California 91324
Telephone: (818) 886-2525
Facsimile: (818) 350-6272

Kathryn M. Trepinski (SBN: 118378)
ktrepinski@trepinskilaw.com
LAW OFFICES OF KATHRYN M. TREPINSKI
A Law Corporation
8840 Wilshire Boulevard, Suite 333
Beverly Hills, California 90211
Telephone: (310) 201-0022
Facsimile: (310) 841-6872

Attorneys for Plaintiffs AURORA BAILEY and
EMILY JUMP, on behalf of themselves and all others
similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AURORA BAILEY and EMILY JUMP, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>ANTHEM BLUE CROSS LIFE AND HEALTH INS. CO. dba ANTHEM BLUE CROSS; BLUE CROSS OF CALIFORNIA dba ANTHEM BLUE CROSS,<br><br>Defendant. | Case No. 4:16-cv-04439-JSW<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, INCENTIVE AWARDS AND COSTS**<br><br>DATE: May 20, 2022<br>TIME: 9:00 a.m.<br>JUDGE: Hon. Jeffrey S. White<br>CTRM: Courtroom 5, 2nd Floor<br><br>Complaint Filed: August 5, 2016<br>1st Am. Complaint Filed: June 19, 2017<br>2nd Am. Complaint Filed: January 25, 2018<br>3rd Am. Complaint Filed: May 23, 2018 |

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

# NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, INCENTIVE AWARDS AND COSTS

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on May 20, 2022, or as soon thereafter as the matter may be heard before the Honorable Jeffrey S. White, U.S. District Court Judge, in the above-titled Court, located at 1301 Clay Street, Oakland, California 94612, Plaintiffs Aurora Bailey and Emily Jump ("Plaintiffs"), on behalf of themselves and all others similarly situated will, and do hereby move, for an award of reasonable attorneys' fees in the amount of $1,145,540.00, incentive awards for class representatives in the amount of $15,000.00 each and reimbursement of costs in the amount of $2,053.40. This motion is made in conjunction with Plaintiffs' Motion for Final Approval of Class Action Settlement of the above-captioned class action.

Plaintiffs' motion is made pursuant to Federal Rule of Civil Procedure 23(h), 29 U.S.C. section 1132(g)(1) and the Order Granting Preliminary Approval of Class Action Settlement entered on August 27, 2021 (Docket No. 98). Plaintiffs' motion is based on this Notice of Motion and Motion, the accompanying Memorandum in Support of the Motion for Attorneys' Fees, Incentive Awards and Costs, the Declarations of Aurora Bailey, Elizabeth Hopkins, Emily Jump, Lisa S. Kantor, J. David Oswalt, Richard M. Pearl, Peter S. Sessions, and Kathryn M. Trepinski, the [Proposed] Order Granting Plaintiffs' Motion for Award of Attorneys' Fees, Incentive Awards and Costs, all filed concurrently, all pleadings and papers on file in this action, and upon such other matters as may be presented to the Court at the time of the hearing.

Dated: April 1, 2022          KANTOR & KANTOR, LLP

LAW OFFICES OF KATHRYN M. TREPINSKI

By: /s/ Lisa S. Kantor
Attorneys for Plaintiffs Aurora Bailey and Emily Jump, on behalf of themselves and all others similarly situated

1
PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, INCENTIVE AWARDS AND COSTS
Case No. 4:16-CV-04439-JSW

I. INTRODUCTION ................................................................................... 1

II. SUMMARY OF THE CASE .................................................................. 2

III. THE SETTLEMENT .............................................................................. 2

IV. PLAINTIFFS ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES .......................................................................................................... 3

    A. The Legal Standard ..................................................................... 3

    B. Plaintiffs Have Achieved More Than "Some Success on the Merits" ......................................................................................... 5

    C. Consideration of the *Hummell* Factors Supports an Award of Fees ............................................................................................. 5

V. THE ATTORNEYS' FEES REQUESTED BY PLAINTIFFS' ARE REASONABLE ....................................................................................... 7

    A. Class Counsel's Rates Are Reasonable ...................................... 7

    B. The Hours Expended on the Litigation by Class Counsel Are Reasonable ................................................................................ 11

VI. THE REQUESTED INCENTIVE AWARDS ARE REASONABLE ..... 13

VII. PLAINTIFFS ARE ENTITLED TO RECOVER THEIR COSTS ........... 15

VIII. CONCLUSION ..................................................................................... 15

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

# TABLE OF AUTHORITIES

**Federal Cases**

*Carpenters S. Cal. Admin. Corp. v. Russell*,
726 F.2d 1410 (9th Cir. 1984) ................................................................................. 6

*Chalmers v. City of Los Angeles*,
796 F.2d 1205 (9th Cir. 1986) ................................................................................. 8

*Hardt v. Reliance Standard Life Ins. Co.*,
560 U.S. 242 (2010) ................................................................................................ 4

*Harlick v. Blue Shield of Cal.*,
686 F.3d 699 (9th Cir. 2012) .............................................................................. 8, 9

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ................................................................................................ 7

*Hummell v. S.E. Rykoff & Co.*,
634 F.2d 446 (9th Cir. 1980) ....................................................................... 4, 5, 6, 7

*Lested v. Alaris Med. Sys., Inc.*,
2010 WL 1416544 (S.D. Cal. Apr. 8, 2010) ........................................................ 15

*Reddick v. Metro. Life Ins. Co.*,
2018 WL 637938 (S. D. Cal. Jan. 31, 2018) ........................................................ 15

*Rodriguez v. West Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ................................................................................ 14

*Smith v. CMTA-IAM Pension Trust*,
746 F.2d 587 (9th Cir. 1984) ....................................................................... 4, 5, 6, 7

*Van Franken v. Atlantic Richfield Co.*,
901 F. Supp. 294 (N.D. Cal. 1995) ....................................................................... 14

*Welch v. Metro. Life Ins. Co.*,
480 F.3d 942 (9th Cir. 2007) ............................................................................. 5, 7

*Wit v. United Behavioral Health*,
2022 WL 45057 (N.D. Cal. Jan. 5, 2022) ............................................................ 11

**State Cases**

*Calvo Fisher & Jacob LLP v. Lujan*,
234 Cal. App. 4th 608 (2015) ............................................................................... 11

*Rea v. Blue Shield of Cal.*,
226 Cal. App. 4th 1209 (2014) ............................................................................... 8

**Federal Statutes**

28 U.S.C. § 1920 ........................................................................................................ 15

29 U.S.C. § 1132(g)(1) ................................................................................................ 4

# MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, INCENTIVE AWARDS AND COSTS

## I. INTRODUCTION

Plaintiffs brought this lawsuit on behalf of a Class of California residents (1) who were enrolled under an ERISA health plan issued or administered by defendant Anthem Blue Cross Life and Health Insurance Company ("Anthem"), (2) who had been diagnosed with an eating disorder and (3) who had a request for eating disorder treatment processed through Anthem's Utilization Review program.[1] A Subclass consists of Class Members whose requests for authorization for eating disorder treatment was denied by Anthem. The primary relief that Plaintiffs sought was injunctive relief ordering Anthem to reprocess Class Members claims under revised Utilization Review procedures.[2]

Settlement negotiations in this case took place over 30 months (December 2018 through May 2021), including three mediation sessions before two different mediators, Magistrate Judge Margaret Nagle (Ret.) and Edward Oster, and extensive additional negotiations between the parties.[3] Concurrently, the parties negotiated the settlement of a factually related state court case, *Ames v. Anthem Blue Cross Life and Health Insurance Company*, LASC Case No. BC591623 ("*Ames*"), which involved a similar settlement structure as in this case and which was preliminarily and finally approved by the California Superior Court during the negotiations of the settlement of this case. (*Id.* at ¶¶ 16-22.)

Class Counsel now request an award of fees in the amount of $1,145,540.00, reimbursement of costs in the amount of $2,053.40, and incentive awards of $15,000.00 each for the two class representatives. Class Counsel do not seek a multiplier. As discussed below, the amount of the requested fees and costs are reasonable, as are the incentive awards for the Plaintiffs, and the Court should grant Class Counsel's requests.

---

[1] Capitalized terms are defined in the Definitions section of the Settlement Agreement ("SA"), attached as Exhibit A to the Declaration of Lisa S. Kantor ("Kantor Dec."), filed concurrently. An Index to the SA is attached as Exhibit B to the Kantor Dec.
[2] Third Amended Complaint (Dkt. No. 59) ¶¶ 92 & 98.
[3] Kantor Dec. ¶¶ 36-55.)

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

## II. SUMMARY OF THE CASE

The factual background and procedural history of this case are described in Plaintiffs' Motion for Final Approval, filed concurrently.[4] That discussion will not be repeated in this Motion.

## III. THE SETTLEMENT

In the settlement, the significant relief provided to qualifying Subclass Members is the opportunity to have their claims for eating disorder treatment reprocessed by Anthem under its current criteria and procedures and without the use of the unlawful medical necessity criteria and biased reviewers challenged by Plaintiffs in this lawsuit. Alternatively, Subclass Members can apply for a "set payment," the amount of which depends on whether they continued treatment or discontinued treatment after Anthem's denial. The Settlement Agreement provides:

**Reprocessing Subclass** – A Class Member could qualify for Reprocessing if their request for eating disorder treatment was denied for lack of medical necessity and they obtained the treatment and paid for the treatment. (SA ¶ III. A. 1. a. i.) If after Reprocessing, Anthem determines the treatment was medically necessary, the Reprocessing Subclass Member will recover the full amount of their Out-of-Pocket Payments, provided the total recovery for all Subclass Members does not exceed $400,000. If it does, Subclass Members will receive a pro rata share of the $400,000. (*Id.*)

**Continued Treatment – Set Payment Subclass** – A Class Member could qualify for a Continued Treatment – Set Payment if their request for eating disorder treatment was denied for lack of medical necessity and, after the denial, they obtained the treatment and paid for the treatment. (SA ¶ III. A. 1. a. iii.) The amount of the payment will be $5,500.00 or the full amount of their Out-of-Pocket Payments, whichever is less. (*Id.*) Anthem will make this payment without a determination that the continued treatment was medically necessary. (SA ¶ III. A. 1. b. ii.)

---

[4] See Plaintiffs' Motion for Final Approval of Class Action Settlement, pp. 2-4, filed concurrently.

**Discontinued Treatment – Set Payment Subclass** – A Class Member could qualify for a Discontinued Treatment – Set Payment if they had a request for eating disorder treatment denied for lack of medical necessity and, as a result of the denial, they did not obtain the treatment. (SA ¶ III. A. 1. a. iv.) The amount of the payment will be $2,100.00 and Class Members who would qualify for the Reprocessing and/or Continued Treatment Subclasses can elect to participate as Discontinued Treatment Subclass Members. (*Id.*) If they do, all they must submit is a fully completed Claim Form. (SA ¶ III. A. 1. b. iii.)

**Anthem's Business Practice Changes** In addition to these payments, all Class Members will be the beneficiaries of the following injunctive relief:

a. Anthem discontinued using its internally created guidelines to evaluate the medical necessity of eating disorder treatment;

b. Anthem discontinued using third-party vendor doctors as peer reviewers and, instead, uses in-house physicians;

c. Anthem changed its non-certification letters so that the letters identify the peer reviewer; and

d. If, in denying a request for eating disorder treatment, the Anthem peer reviewer determines that a lower level of care is medically necessary, the peer reviewer will identify the lower level of care.

(SA ¶ III. A. 4.) The injunctive relief addresses deficiencies in Anthem's Utilization Review program that were central issues in Plaintiffs' lawsuit. (Kantor Dec. ¶ 69.) In addition, Plaintiffs' legislative efforts resulted in changes to Anthem's Utilization Review program to ensure compliance with the new California Mental Health Parity Act.[5]

## IV. PLAINTIFFS ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES

### A. The Legal Standard

ERISA provides that "[a] court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). With respect to ERISA fee

---
[5] Declaraton of Kathryn M. Trepinski ("Trepinski Dec.") ¶¶ 16-20, filed concurrently.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

awards, the Ninth Circuit has instructed that ERISA "should be liberally construed in favor of protecting participants in employee benefits plans." *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984). Thus, section 1132(g)(1) should be "read broadly to mean that a plan participant or beneficiary, if he prevails in his suit under § 1132 to enforce his rights under his plan, 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" *Id.* (citations omitted).

Before a court can award fees under section 1132(g)(1), however, it must first determine that the plaintiff has achieved "some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010). This must be more than a "trivial success on the merits" or a "purely procedural victor[y]," but if the court can "fairly call the outcome of the litigation some success on the merits," it need not conduct a "lengthy inquir[y]" into whether the success was "substantial" or "occurred on a "central issue." *Id.* (citations omitted).

Once the court determines that the plaintiff has achieved "some degree of success," it then considers the five "*Hummell* factors" in deciding whether a fee award is appropriate:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting in similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.[6]

None of the *Hummell* factors are decisive and some may not be pertinent in a particular case. *Smith*, 746 F. 2d at 590.

If the court determines that it is appropriate to award fees, the court calculates a reasonable fee, using a two-step process. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 945 (9th Cir. 2007). First, the court must calculate the "lodestar figure" by taking the number

---

[6] *Smith*, 746 F.2d at 590 (citing *Hummell v. S.E. Rykoff & Co.,* 634 F.2d 446, 453 (9th Cir. 1980)).

of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. *Id.* Second, in "rare and exceptional" cases, the court may adjust the lodestar upward or downward using a multiplier based on factors not subsumed in the initial lodestar calculation. *Id.* at 946.

### B. Plaintiffs Have Achieved More Than "Some Success on the Merits"

Through the Settlement and their legislative efforts, Plaintiffs have achieved virtually all of the relief they could have obtained at trial, *i.e.*, Class Members can elect to have their denied claims for eating disorder treatment reprocessed correctly by Anthem under a revised, Parity Act-compliant Utilization Review program. (Kantor Dec. ¶¶ 59-69.) Alternatively, if they choose, Class Members can receive a set payment, the amount of which is dependent on whether they continued treatment ($5,000) or discontinued treatment ($2,100) after the denial. (*Id.*) Thus, there is no doubt that Plaintiffs have achieved "some success on the merits." *See Smith*, 746 F.2 at 591 ("By way of settlement, [plaintiff] received a portion of what he brought suit to recover, and so crossed the 'statutory threshold' entitling him to recover fees from the defendant.").

### C. Consideration of the *Hummell* Factors Supports an Award of Fees

Application of the *Hummell* factors compels an award of attorneys' fees.

The first *Hummell* factor considers "the degree of the [defendant's] culpability or bad faith." *Smith*, 746 F.2d at 590. In the Settlement Agreement, the parties agreed that Anthem's entry into the Settlement was not an admission of any fault or wrongdoing on Anthem's part. (S.A. ¶ III. L. 7.) However, as a commonsense matter, Anthem's willingness to overhaul its Utilization Review program and reprocess the Class Members' denied claims is an acknowledgment of some historical culpability on Anthem's part. In any event, while bad faith is a factor that would always justify an award of fees, it is not required. *Smith*, 746 F.2d at 590.

The second *Hummell* factor considers "the ability of the opposing parties to satisfy an award of fees." *Smith*, 746 F.2 at 590. There is no doubt that Anthem could satisfy an attorneys' fee award in the amount sought by Plaintiffs. For example, according to

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

Anthem's most recent financial statement available on the California Department of Insurance's website, it had assets of $2.495 billion and premium income of $2.190 billion in 2020 and net income of $37.9 million in 2020 and $267.7 million in 2019.[7] Anthem's ability to pay supports an award of attorneys' fees. "Based on this factor alone, absent special circumstances, a prevailing ERISA employee plaintiff should ordinarily receive attorney's fees from the defendant." *Smith*, 746 F.2d at 590.

The third *Hummell* factor considers whether an award of attorneys' fees would deter others from acting in similar circumstances. *Smith*, 746 F.2d at 590. By reason of the Settlement, Anthem has significantly modified its Utilization Review program, including discontinuing use of internally-created medical necessity guidelines and outside medical reviewers. (S.A. ¶ III. A. 4.) Plaintiffs were the catalyst for these changes and an award of attorneys' fees should encourage other insurers to consider similar changes.[8]

The fourth *Hummell* factor considers whether Plaintiffs sought to benefit all plan participants or resolve a significant legal question. *Smith*, 746 F.2d at 590. Since the present action was brought as a class action on behalf of all similarly situated Class Members and since the Settlement provides injunctive and potentially monetary benefits to all Class Members, Plaintiffs have not only sought to benefit all Class Members, they have successfully done so. Therefore, this factor weighs in favor of an award of attorneys' fees.

The fifth, and final, *Hummell* factor considers the relative merits of the parties' positions, which "is, in the final analysis, the result obtained by the plaintiff." *Smith*, 746 F.2d at 590. In this regard, when a plaintiff receives what they sued for by way of voluntary settlement, "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Id.* at 590-91 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)). In the present case, as noted above, Plaintiffs

---

[7] See California Department of Insurance website at https://interactive.web.insurance.ca.gov/sdrive/companyprofile/2020/lifeAndDisability/annual/62825.2020.X.AN.PF.O.J.4159721.pdf.

[8] *See Carpenters S. Cal. Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir. 1984) ("If defendant employers face the prospect of paying attorney's fees for successful plaintiffs, they will have added incentive to comply with ERISA.").

achieved through settlement almost all of the relief sought in the lawsuit and, thereby, "crossed the 'statutory threshold' entitling [them] to recover fees from the defendant." *Id.* at 591. In addition, Plaintiffs effected legislative change through their work in revising the California Mental Health Parity Act, which affirmed the merits of their position in this lawsuit. (Trepinski Dec. ¶¶ 16-20.)

Therefore, a consideration of the *Hummell* factors strongly supports an award of attorneys' fees in this case. The question then is what constitutes a reasonable fee award.

## V. THE ATTORNEYS' FEES REQUESTED BY PLAINTIFFS ARE REASONABLE

To calculate attorneys' fees to be awarded under section 1132(g)(1), the Court must first establish a lodestar by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Welch*, 480 F.3d at 945. "The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed." *Id.* at 945-46. In the present case, both Class Counsel's hourly rates and time expended on the litigation are reasonable.

### A. Class Counsel's Rates Are Reasonable

Plaintiffs' total lodestar in this case is $1,145, 540.00, calculated as follows:

| Firm | Total Hours | Total Amount |
|---|---|---|
| Trepinski Firm[9] | 408.5 | $367,650 |
| Kantor & Kantor[10] | 892.2 | $777,890 |
| **TOTAL** | 1,300.7 | $1,145,540 |

The lodestar is based upon the following hourly rates:

| Attorney | Years of Experience | Hourly Rate |
|---|---|---|
| Lisa S. Kantor | 39 | $900 |
| Kathryn M. Trepinski | 38 | $900 |
| J. David Oswalt | 46 | $900 |
| Elizabeth Hopkins | 36 | $750 |
| Peter S. Sessions | 25 | $650 |

---

[9] Trepinski Dec. ¶¶ 36-37.
[10] Kantor Dec. ¶¶ 70-73.

KANTOR & KANTOR LLP
19839 Nordhoff Street
Northridge, California 91324
(818) 886 2525

In determining whether these rates are reasonable, the Court "should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986) (citation omitted).

As discussed in their concurrently filed declarations, Class Counsel are experienced class action, ERISA and appellate attorneys who specialize in cases involving insurance coverage for insureds with eating disorders or other psychiatric conditions.

Lisa Kantor graduated from the University of Virginia law school in 1983 and has practiced law for 39 years.[11] In 2004, Ms. Kantor and her husband formed Kantor & Kantor, LLP, which specializes in representing people who have been denied disability, health and life insurance benefits, primarily in ERISA cases. Since 2009, Ms. Kantor's practice has been devoted almost exclusively to representing clients who have eating disorders or other psychiatric disorders and who have been denied insurance coverage for their treatment. Ms. Kantor was counsel of record in the two leading cases interpreting the California Mental Health Parity Act to require insurers to provide all medically necessary treatment for patients with a Severe Mental Illness.[12] She has been counsel of record in numerous state and federal class actions involving claims relating to insurance coverage for eating disorders or other psychiatric disorders and was appointed as class counsel in three of those cases. Ms. Kantor's hourly rate is $900 per hour and she has been awarded attorneys' fees based on that rate in two class actions.[13]

Kathryn Trepinski graduated from Southwestern Law School in 1984 and has practiced law for 38 years.[14] From 1990 to 2000, Ms. Trepinski was Special Counsel with Sedgwick LLP representing insurance companies in litigation and coverage disputes, including in class actions. From 2000 to 2009, Ms. Trepinski was employed with Farmers

---

[11] Ms. Kantor's background and experience are discussed at Kantor Dec. ¶¶ 2-5 and 85-92.
[12] *Harlick v. Blue Shield of Cal.*, 686 F.3d 699 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 1492 (2013) ("*Harlick*") and *Rea v. Blue Shield of Cal.*, 226 Cal. App. 4th 1209 (2014) ("*Rea*").
[13] *Ames* ($1,550,000 attorneys' fee award) and *Rea* ($3.8 million attorneys' fee award).
[14] Ms. Trepinski's background and experience are discussed at Trepinski Dec. ¶¶ 47-59.

Group, Inc., gaining extensive experience representing the company in class actions. In 2010, Ms. Trepinski started her own practice, specializing in class actions based on the California and federal mental health parity acts. She has been appointed as class counsel in six class actions involving claims relating to insurance coverage for mental health conditions. Ms. Trepinski's hourly rate is $900 per hour and she has been awarded attorneys' fees based on that rate in the *Ames* and *Rea* class actions and in *Bodner v. Blue Shield of California,* LASC Case No. BC516868.

David Oswalt graduated from UCLA Law School in 1976 and has practiced law for 46 years.[15] Before joining Kantor & Kantor as a partner in February 2009, Mr. Oswalt was a partner for 12 years at the international law firm of Arnold & Porter LLP, where he handled a wide variety of civil litigation matters in federal and state courts. After joining Kantor & Kantor, Mr. Oswalt's practice has been devoted almost exclusively to representing plaintiffs in insurance benefit litigation and, in particular, in class actions alleging violations of the federal and state mental health parity acts. He was co-counsel in *Harlick* and *Rea*, the two landmark cases interpreting the California Mental Health Parity Act to require insurers to provide all medically necessary treatment for patients with a Severe Mental Illness. He has been counsel of record in numerous class actions involving claims relating to insurance coverage for treatment of eating disorders or other psychiatric disorders. Ms. Oswalt's hourly rate is $900 per hour and he has been awarded attorneys' fees based on that rate in two class actions (*Ames* and *Rea*).

Elizabeth Hopkins graduated from Georgetown University Law Center in 1986 and has practiced law for 36 years.[16] From 1987 to 2017, Ms. Hopkins was employed by the United States Department of Labor in the Office of the Solicitor. From 1989 to 2002, she was a senior appellate attorney in the Special Appellate Division, briefing and arguing cases in the federal courts of appeal and the Supreme Court. From 2002, Ms. Hopkins was

---

[15] Mr. Oswalt's background and experiences are discussed in the Declaration of J. David Oswalt ("Oswalt Dec.") ¶¶ 13-20, filed concurrently.

[16] Ms. Hopkins' background and experiences are discussed in the Declaration of Elizabeth Hopkins ("Hopkins Dec.") ¶¶ 13-22, filed concurrently

9

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, INCENTIVE AWARDS AND COSTS
Case No. 4:16-CV-04439-JSW

counsel for appellate and special litigation in the Plan Benefits Security Division, in charge of the ERISA amicus and appellate program, filing over a 100 amicus and party briefs and arguing cases throughout the country. In 2018, Ms. Hopkins joined Kantor & Kantor as a partner and litigates ERISA pension, healthcare, disability and life insurance cases in California and nationwide, including class actions. Ms. Hopkins' current hourly rate is $800 per hour.

Peter Sessions graduated from the University of Southern California Law School in 1997 and has been practiced law for 25 years.[17] Mr. Sessions joined Kantor & Kantor in 2004 and, since joining the firm, has specialized in the representation of insureds in disputes with their insurance carriers, including over 200 ERISA cases. At Kantor & Kantor, Mr. Sessions is an appellate specialist, handling the briefing and argument of numerous, primarily federal court appeals. Mr. Sessions' hourly rate as a Senior Associate is $650 per hour.

In evaluating the reasonableness of Class Counsel's hourly rates, the Court has the opinion of an eminently qualified expert, Richard M. Pearl.[18] Mr. Pearl is the author of California Attorney Fee Awards (3d ed. Cal. CEB 2010), "[t]he leading California attorney fee treatise,"[19] and he is frequently asked to opine about the reasonableness of attorneys' fee requests. As Magistrate Judge Spero recently observed:

> [T]he Court places significant weight on Pearl's opinion that the rates charged by all of the timekeepers listed above are reasonable . . . Pearl has extensive experience in the area of attorney billing rates in this district and has been widely relied upon by both federal and state courts in Northern California (including the undersigned) in determining reasonable billing rates.[20]

---

[17] Mr. Sessions' background and experiences are discussed in the Declaration of Peter S. Sessions ("Sessions Dec.") ¶¶ 7-11, filed concurrently
[18] Declaration of Richard M. Pearl ("Pearl Dec."), filed concurrently.
[19] *Calvo Fisher & Jacob LLP v. Lujan*, 234 Cal. App. 4th 608, 621 (2015).
[20] *Wit v. United Behavioral Health*, 2022 WL 45057, at *7 (N.D. Cal. Jan. 5, 2022) (citations omitted).

In the present case, it is Mr. Pearl's opinion that the hourly rates requested by Plaintiffs' counsel are reasonable and are well within the range of non-contingent market rates charged by San Jose and San Francisco Bay Area attorneys of reasonably comparable experience, skill, and expertise for reasonably comparable services. (Pearl Dec. ¶¶ 10-14.) In his declaration, Mr. Pearl explains in detail the basis for this opinion, including that other courts have found Class Counsel's rates to be reasonable, similar rates have been found reasonable by other courts, Class Counsel's rates are in line with hourly rates charged by other law firms, and the rates are consistent with the range of rates in surveys of law firms' billing rates and in recent filings in other local cases. (*Id.* at ¶¶ 15-20.)

**B.    The Hours Expended on the Litigation by Class Counsel Are Reasonable**

The attorneys discussed in the last section have billed the following number of hours to this case:[21]

| Attorney | Hours | Rate | TOTAL |
|---|---|---|---|
| Lisa S. Kantor | 258.8 | $900 | $232,920 |
| Kathryn M. Trepinski | 408.5 | $900 | $367,650 |
| J. David Oswalt | 480.8 | $900 | $432,720 |
| Elizabeth Hopkins | 230.6 | $750 | $97,950 |
| Peter S. Sessions | 22.0 | $650 | $14,300 |

Class Counsel have prepared the following chart identifying the number of hours spent by the two firms on the various categories of activities related to this action:

| Firm | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|
| Trepinski | 31.25 | 48.00 | 20.75 | 120.00 | 0 | 1.25 | 96.50 | 25.50 | 65.25 |
| Kantor & Kantor | 13.30 | 63.70 | 320.90 | 111.50 | 0 | 77.20 | 258.20 | 45.10 | 2.30 |
| **TOTAL** | 44.55 | 111.70 | 341.65 | 231.50 | 0 | 78.45 | 354.70 | 70.60 | 67.55 |

Category 1: Research and analysis, including initial case research
Category 2: Draft pleadings, legal and factual research re same
Category 3: Law and motion, responding to pleading challenges, prepare

---

[21] Kantor Dec. ¶¶ 70-73; Trepinski Dec. ¶¶ 36-37.

      motions for preliminary and final approval
Category 4: Factual investigation, informal and formal discovery, meeting and conferring
Category 5: Prepare for and attend hearings
Category 6: Prepare appellate briefs
Category 7: Mediation and settlement related activities
Category 8: Settlement administration
Category 9: Legislative activities challenging Anthem's utilization review practices

   Consistent with the Northern District's Procedural Guidance for Class Action Settlements, Plaintiffs have concurrently filed declarations for each of the above-listed attorneys identifying the number of hours they spent on each of the nine categories of activities, describing the work performed and identifying their hourly billing rate information.[22] In addition, Plaintiffs have filed copies of both firm's billing records, which identify the work done and the amount billed.[23]

   The number of hours billed by Class Counsel to this litigation are reasonable in light of the following:

   First, the initial Complaint was filed on August 5, 2016, over five and a half years ago. Therefore, the work performed by Class Counsel took place over the 67 months that this case has been pending, which averages to less than 20 hours per month.

   Second, though the parties did not engage in extensive discovery, they did engage in extensive law and motion practice. Over a three-year period, Anthem filed four motions to dismiss. (Kantor Dec. ¶¶ 27-33.) In response, Plaintiffs had to research, prepare and file oppositions to the motions to dismiss (and a motion for reconsideration) and, after the Court's rulings, Plaintiffs also had to research, prepare and file a First, Second and Third Amended Complaint. (*Id.*) Additionally, after the Court granted Anthem's motion to dismiss as to Ms. Bailey, Plaintiffs appealed that ruling to the Ninth Circuit and the appeal

---

[22] Kantor Dec. ¶¶ 70-82; Trepinski Dec. ¶¶ 33-46; Oswalt Dec. ¶¶ 2-12; Hopkins Dec. ¶¶ 2-12; Sessions Dec. ¶¶ 2-6.
[23] Kantor Dec. ¶ 71 & Exhibit C; Trepinski Dec. ¶ 33 & Exhibit C.

was fully briefed and awaiting oral argument when the case finally settled in May 2021. (*Id.* at ¶ 33.)

Third, while the parties continued to actively litigate the case, commencing in December 2018, they also actively tried to settle it. (Kantor Dec. ¶¶ 36-55.) As detailed in Ms. Kantor's Declaration, these efforts took place over 30 months, involved three mediations before two highly experienced mediators, Magistrate Judge Margaret Nagle (Ret.) and Edward Oster, and multiple conference calls and extensive correspondence with Anthem's counsel. Also, the negotiations required Class Counsel to spend substantial time reviewing and revising Anthem's voluminous Training Manual. (Trepinski Dec. ¶¶ 41-44.) Once a settlement in principle had been reached, the parties spend over two months negotiating the terms of the Settlement Agreement. (Kantor Dec. ¶ 55.)

Therefore, given the long duration of this litigation, the substantial law and motion practice, and the literally years-long settlement negotiations, the number of hours billed by Class Counsel to this case are reasonable, particularly in light of the significant relief secured for the Class.

## VI. THE REQUESTED INCENTIVE AWARDS ARE REASONABLE

The Settlement Agreement provides that Plaintiffs can seek an incentive award of $15,000 for each Plaintiff and that Anthem will pay that amount. (SA III. E. 2.) Incentive awards are typical in class action cases. *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). In determining whether an incentive award is reasonable, courts generally consider:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation.

*Van Franken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

Considering these criteria, a $15,000 incentive award is justified in light of Plaintiffs' contribution to the litigation.

Both Plaintiffs have suffered from an eating disorder, anorexia nervosa, and related mental disorders since high school.[24] Both were admitted to residential treatment for their eating disorders and, though Anthem initially authorized their treatment, Anthem ultimately denied authorization based upon its flawed "medical necessity guidelines" then in effect. Despite the denial, both Plaintiffs stayed in treatment and paid for the treatment. Ms. Bailey paid over $75,000 and Ms. Jump over $100,000.

In agreeing to become class representatives, both Ms. Bailey and Ms. Jump understood that they were giving up the right to sue Anthem individually for the substantial amounts they paid for treatment and for emotional distress caused by Anthem's denial and, instead, could only recover whatever relief was awarded to the class. They also understood that they were putting in issue their mental health conditions and their treatment and that information regarding their conditions and treatment would be publicly available. In fact, the pleadings filed in this case contain extensive discussions of personal information regarding Plaintiffs' mental health conditions and treatment.[25]

In agreeing to be class representatives, Plaintiffs were informed that class actions often take a long time and, in the end, it has been five and a half years since this case was filed. During that time, Plaintiffs have stayed informed about the case, responded to Class Counsel's requests for information and reviewed and concurred in the terms of the settlement. Finally, like other Class Members, Plaintiffs have submitted Claim Forms requesting that Anthem reprocess their claims, but they do not yet know the outcome of those claims.

---

[24] Ms. Bailey's illness, its treatment and her involvement in this case are discussed in the Declaration of Aurora Bailey, filed concurrently. Ms. Jump's illness, its treatment and her involvement in this case are discussed in the Declaration of Emily Jump, filed concurrently.

[25] See, *e.g.*, Third Amended Complaint (Dkt. No. 59) ¶¶ 18-38 & 43-56.

14

PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, INCENTIVE AWARDS AND COSTS
Case No. 4:16-CV-04439-JSW

Given the financial and personal sacrifices made by the Plaintiffs in agreeing to become class representatives and their ongoing active participation in the litigation, the Court should award an incentive award of $15,000 to each of the Plaintiffs.

## VII. PLAINTIFFS ARE ENTITLED TO RECOVER THEIR COSTS

A prevailing ERISA Plaintiff is entitled to recover the categories of costs enumerated under 28 U.S.C. § 1920 as well as reasonable out of pocket litigation expenses that lawyers in the community typically bill to clients separately from their hourly rates. *Reddick v. Metro. Life Ins. Co.*, 2018 WL 637938, at *5 (S. D. Cal. Jan. 31, 2018). Plaintiffs seek to recover costs in the amount of $2,053.40, which consists primarily of court filing fees and messenger fees. (Kantor Dec. ¶ 83-84 & Exh. D.) Such costs are recoverable in ERISA cases. *Reddick*, 2018 WL 637938, at *5 (service and messenger charges); *Lested v. Alaris Med. Sys., Inc.*, 2010 WL 1416544, at *3 (S.D. Cal. Apr. 8, 2010) (filing fees).

## VIII. CONCLUSION

Class Counsel's requests for an award of attorneys' fees, reimbursement of costs and incentive awards for the class representatives are reasonable and should be granted by the Court.

Dated: April 1, 2022

KANTOR & KANTOR, LLP

LAW OFFICES OF KATHRYN M. TREPINSKI

By: /s/ Lisa S. Kantor

Attorneys for Plaintiffs Aurora Bailey and Emily Jump, on behalf of themselves and all others similarly situated